IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DELORES REEDY                                                                                          PLAINTIFF

v.                                             Case No. 4:08CV00413 JLH

ROCK-TENN COMPANY OF ARKANSAS;
ROCK-TENN COMPANY OF TEXAS; and
ROCK-TENN SERVICES                                                                               DEFENDANTS

**OPINION AND ORDER**

Delores Reedy commenced this action against Rock-Tenn Company of Arkansas, Rock-Tenn Company of Texas, and Rock-Tenn Services (collectively "Rock-Tenn") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Reedy alleges that she worked hundreds of overtime hours as a non-exempt employee under the FLSA but was not paid for those hours. Rock-Tenn has filed a motion for summary judgment, and Reedy has responded. For the following reasons, Rock-Tenn's motion for summary judgment is denied in part and granted in part.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there

is a *genuine issue for trial.*'"  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

**II.**

Dolores Reedy worked at Rock-Tenn's folding carton plant in Conway, Arkansas, from June 1986 until March 15, 2007, when she voluntarily resigned.  Reedy, who has no college degree or formal accounting training, began as a temporary employee and later worked full-time as a payroll clerk.  Rock-Tenn originally treated her as an hourly employee and paid her overtime.  At some point, Reedy acquired the title of "Payroll Manager," was paid on a salary basis, and stopped receiving overtime compensation.

Reedy was responsible for Rock-Tenn's payroll.  Rock-Tenn hired several assistants to work with Reedy in the payroll department, including Linda Suggs, Carolyn Hansen, and Denise Bent.  Sometimes assistants worked only as temporary employees.  Reedy's responsibilities in the payroll department included maintaining employee files; wage garnishments; referring Family and Medical Leave Act ("FMLA") matters to her immediate supervisor, Ken Hogan, or the Benefit Services Center; completing some Employment Eligibility Verification forms based on the documents in employees' files; and responding to requests for information from the Arkansas Employment Security Department.  At some point, Reedy composed a policy reference book for the payroll department.

Reedy says that after she stopped receiving overtime pay, she continued to log her hourly time and report her time to Hogan.  She says she spoke with someone in Rock-Tenn's corporate

office about whether she should be exempt from overtime compensation under FLSA. Reedy also says that she and Hogan attended a class in which the instructors conducted an exercise to determine which persons were exempt under the FLSA, and Reedy says that at the end of the exercise she was in the group of persons who were not exempt. Reedy says that she discussed the exercise with Hogan, but Rock-Tenn made no changes to her exempt status.

Reedy sued Rock-Tenn for back pay and liquidated damages under the FLSA, and Rock-Tenn has now moved for summary judgment. Although the parties do not dispute that Reedy's work in the payroll department involved the performance of certain duties, each party disputes the other's characterization of the nature of her duties and the extent to which they involved the exercise of discretion and independent judgment.

### III.

In its motion for summary judgment, Rock-Tenn argues that Reedy was an administrative employee under the FLSA and was thus exempt from overtime compensation. Rock-Tenn also argues that even if Reedy was not an exempt employee, it did not willfully violate the FLSA, and that the two-year statute of limitations should thus apply to Reedy's claim.

**A.    EXEMPT STATUS**

Rock-Tenn argues that Reedy is exempt from the FLSA's overtime pay requirements. The FLSA exempts "any employee employed in a bona fide . . . administrative capacity" from the overtime compensation requirement. 29 U.S.C. § 213(a)(1). An exempt administrative employee is someone: (1) who is compensated not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and (3) whose primary duty includes the exercise of discretion and

independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). The employer bears the burden of proving that the plaintiff is exempt from the requirement of overtime compensation. *Fife v. Harmon*, 171 F.3d 1173, 1174 (8th Cir. 1999).

Rock-Tenn also argues that the issue of whether Reedy's duties exclude her from the FLSA's overtime requirements is a question of law not to be decided by a jury. In support, Rock-Tenn cites the Court to *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 712 (1986), and *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1081 (8th Cir. 2000) ("Disputes regarding the nature of an employee's duties are questions of fact, but the ultimate question whether an employee is exempt under the FLSA is an issue of law."). *See also Spinden v. GS Roofing Products Co., Inc.*, 94 F.3d 421, 426 (8th Cir. 1996) ("[T]he amount of time devoted to administrative duties, and the significance of those duties, present factual questions. The ultimate question, however of whether employees' particular activities exclude them from the overtime benefits of the FLSA is a question of law.") (internal citations and quotes omitted); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003). Although it is true that the ultimate question of whether Reedy is exempt under the FLSA is an issue of law, there may still be issues of fact regarding the nature of Reedy's duties and the extent to which they involved exercising discretion or independent judgment. Where issues of fact remain, it is for a trier of fact to determine, after hearing all the evidence, the actual nature and significance of Reedy's duties and the extent to which she exercised discretion or independent judgment in carrying out those duties.

The parties do not dispute that Reedy earned more than $455 per week, meeting the first prong of the administrative exemption test. The parties do dispute whether Reedy's primary duties

were directly related to Rock-Tenn's management or general business operations and included the exercise of discretion and independent judgment with respect to matters of significance.

Regarding the second prong of the administrative employee exemption, Reedy admitted in her response to a request for admission that her primary duty was performance of office work in Rock-Tenn's human resources and personnel department. The Department of Labor regulations state that "work directly related to management or general business operations" includes human resources and personnel management. 29 C.F.R. § 541.201(b). Thus, according to Reedy's admission and other statements in her deposition testimony, Reedy's duties were directly related to the management or general business operations of Rock-Tenn.

Regarding the third prong of the administrative employee exemption, however, there is an issue of fact as to the extent to which Reedy's duties included the exercise of discretion and independent judgment with respect to matters of significance. The Court must apply the phrase "discretion and independent judgment" in light of all the facts involved in Reedy's particular employment situation. 29 C.F.R. § 541.202(b). The Court may consider the following factors:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* The Department of Labor regulations also provide guidance to making a determination of whether an employee's duties require the exercise of discretion and independent judgment:

> The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment. For example, the policies formulated by the credit manager of a large corporation may be subject to review by higher company officials who may approve or disapprove these policies. The management consultant who has made a study of the operations of a business and who has drawn a proposed change in organization may have the plan reviewed or revised by superiors before it is submitted to the client.

29 C.F.R. § 541.202(c). Finally, the regulations provide guidance as to what exercising "discretion and independent judgment" does not include:

> The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a "statistician."

29 C.F.R. § 541.202(e). In addition, the regulations state that an employee's use and application of manuals does not preclude her from exemption:

> The use of manuals, guidelines or other established procedures containing or relating to highly technical, scientific, legal, financial or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption under section 13(a)(1) of the Act or the regulations in this part. Such manuals and procedures provide guidance in addressing difficult or novel circumstances and thus use of such reference material would not affect an employee's exempt status.

6

29 C.F.R. § 541.704.

Rock-Tenn offers the following facts in support of its argument: (1) Reedy was the "payroll manager," had over twenty years of experience, was paid more than payroll assistants, and trained and supervised the payroll assistants; (2) Reedy investigated alleged pay discrepancies and notified management if there were any problems requiring remedial action; (3) Reedy routinely completed Employment Eligibility Verification forms, or I-9s; (4) Reedy responded to requests for information from the Arkansas Employment Security Department, which often triggered Rock-Tenn's responsibility to pay unemployment benefits to ex-employees; (5) Reedy touted her understanding of and regularly applied the FMLA; (6) Reedy engaged in policy clarification and research required by the human resources manager and in response to employee questions; and (7) Reedy followed the applicable laws governing priority of garnishments when the payroll department received a court order to withhold money for child support.

In support of its argument that Reedy's duties involved exercising discretion and independent judgment, Rock-Tenn cites the Court to the following cases: *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 1001 (8th Cir. 2003) (affirming a district court's finding that where the employee, a claims manager for an insurance company, "independently had to compare and evaluate possible courses of action, and her decisions or recommendations went to matters of significance for the [employer]," her primary duties included exercising discretion and independent judgment); *Spinden v. GS Roofing Products Co., Inc.*, 94 F.3d 421, 428 (8th Cir. 1996) (holding that an employee was administrative where he was the third highest paid employee at the plant; was the chief financial employee at the plant; was essentially a one-man department, receiving only occasional assistance; and was not directly supervised by any financial officer at the plant, receiving

direction only from the plant manager and the corporate office); *Dymond v. U.S. Postal Service*, 670 F.2d 93, 95 (8th Cir. 1982) (holding that postal inspectors exercised independent judgment and discretion where they determined when a situation requires immediate action and whether an alleged violation warrants prosecution or is a minor violation that should not be presented to the United States Attorney for prosecution).

Reedy responds that her work as payroll manager did not involve the use of discretion and independent judgment. Reedy says that she was paid more than the payroll assistants because of her longevity, not because of significant authority within the payroll department.[1] Reedy also denies that her training and monitoring of payroll assistants rose to the level of exercising discretion and independent judgment. She says that her duties were merely clerical in nature and that the assistants came to her with questions primarily because she had the most experience. She also says that the assistants reported to Ken Hogan, not to her. In support of her characterization of her position and duties in the payroll department, Reedy has offered an affidavit from one of the payroll assistants, Linda Suggs. Suggs says that Reedy was her coworker, not her supervisor, and that she performed many of the same routine tasks as Reedy, including: completing I-9s; calculating wage garnishments; responding to requests for information from the Arkansas Employment Security Department; handling complaints about payroll discrepancies; and reporting potential FMLA leave issues. Suggs, who was an hourly employee not exempt from FLSA overtime pay requirements, says that her and Reedy's duties were primarily those of a payroll clerk.

---

[1] Reedy worked at Rock-Tenn for twenty-one years, whereas the assistants were often temporary employees or just starting with the company.

Reedy's job title of "payroll manager," standing alone, is of little use in determining whether she was exempt, and the Court must examine evidence relating to the nature of Reedy's duties. *See Lentz v. Hospitality Staffing Solutions, LLC*, 2008 WL 269607, at *4 (N.D. Ga. Jan. 28, 2008). A reasonable jury could conclude that Reedy did not exercise discretion and independent judgment in her job as payroll manager. Therefore, the nature of Reedy's duties and her position relative to the payroll assistants is a disputed issue of fact.

Regarding Reedy's investigatory duties, Rock-Tenn asserts that she investigated alleged pay discrepancies and notified management if there were any problems requiring remedial action. Rock-Tenn argues that her investigatory duties were similar to those of the postal workers in *Dymond*, wherein the Eighth Circuit held that postal workers exercised discretion and independent judgment inasmuch as they determined when a situation required immediate action and whether an alleged violation was minor or required reporting to the United States Attorney for prosecution. *Dymond*, 670 F.2d at 95. Reedy responds that her investigatory responsibilities were distinguishable from the postal workers in *Dymond*. Reedy says that employees came to her about payroll discrepancies because she was the one who computed payroll, that she had no authority to issue a corrective check, and that she had to receive permission from management before taking any remedial action.

Rock-Tenn replies that Reedy's opposition is merely a disagreement over the proper legal conclusion to be drawn from the undisputed fact that Reedy was responsible for addressing and remedying alleged pay discrepancies. However, Rock-Tenn's assertion that Reedy's duties included significant investigatory responsibilities is based on the following deposition testimony of Reedy:

> Q.     If an employee had some sort of discrepancy where they said, "Well, my pay is wrong. You know, you should have given me a vacation day instead of not

9

>       paying me for that shift," or something, what would you do when they came to you with a problem like that?
>
> A.    We would pull the payroll records. We would verify the—each piece of information that led us to making the decision on what this person should be paid per the documentation we were given. We would review it. If we saw the error, then we would make an adjustment to the next week's payroll, if they would wait. If we didn't see it but they still wanted to discuss it, we would send them to the H.R. manager.
>
> * * *
>
> Q.    Suppose an employee came in and said, Hey, I think my pay is wrong and here's why," and he showed you documents or whatever and you reviewed it and you found that clearly there was a clear error there, someone somewhere made a clear error and that this person was actually owed more money, could you cut that person a check?
>
> A.    With approval.
>
> Q.    Okay. So without—but out of your own independent judgment and decision making, you couldn't write the person a check yourself without checking with somebody?
>
> A.    I had to get management approval to do another payroll.
>
> Q.    Okay. So you would go to them and say, "Hey, here's the problem. I've looked at it and here's the problem with it," and they would give you approval then to write the person a check; is that right?
>
> A.    Yes.

Reedy's deposition testimony does not demonstrate that her payroll duties required independent judgment or discretion. She reviewed the payroll records in response to complaints; but she was not authorized to proceed with remedial action unless approved by management. Her responsibilities were more clerical than investigatory, unlike those of the postal inspectors in *Dymond*. Rock-Tenn has failed to show that, as a matter of law, her authority to investigate and remedy payroll discrepancies required the exercise of discretion and independent judgment.

As to the completion of I-9s, Reedy responds that she received no special training qualifying her to recognize a fake employment form, that her job was merely to check the documents in the employee's personnel file, and that she then signed the I-9s to indicate that Rock-Tenn did in fact have the proper documentation on a particular employee. Rock-Tenn replies that the fact that Reedy signed the I-9s under penalty of perjury—swearing that she had examined the employee's documents—means that she had to compare and evaluate possible courses of conduct and use her common sense. Rock-Tenn cites to *Haywood v. North Am. Van Lines*, 121 F.3d 1066, 1073 (7th Cir. 1997), for the proposition that an employee who uses common sense satisfies the discretion and independent judgment prong of the administrative employee exception. In that case, however, the Seventh Circuit mentioned "common sense" in a footnote, referencing the employer's guidelines which informed its employees, whose job it was to negotiate with customers, that they had considerable latitude to negotiate and were to "just use [their] common sense." *Haywood*, 121 F.3d at 1073 n.8. The Seventh Circuit did not hold that every employee who exercises common sense in the performance of a job duty is exercising discretion and independent judgment, and Rock-Tenn has cited no cases holding that completing I-9s amounts to exercising discretion and independent judgment. Furthermore, other than the I-9s and Hogan's affidavit, there is no other evidence relating to Reedy's completion of the I-9s, and Reedy was not questioned about the I-9s in her deposition testimony.

As to Reedy's communications with the Arkansas Employment Security Department, Reedy seemingly characterizes those communications as routine clerical work. Rock-Tenn, relying on Hogan's affidavit, asserts that Reedy's responses to the Department's requests for information often triggered Rock-Tenn's responsibility to pay unemployment benefits. However, Rock-Tenn offers

no authority for the proposition that acting as a liaison between the employer and a governmental agency in and of itself rises to the level of exercising discretion and independent judgment. It is a disputed issue of fact whether Reedy's work in this area was routine clerical work, providing information to a state department when requested, or actually involved discretion and independent judgment.

Regarding Reedy's understanding and application of the FMLA, Reedy responds that she was merely instructed to look for certain "red flags" that could indicate that an employee might be asking for FMLA-qualifying leave. Reedy points to Hogan's deposition, in which he stated that Reedy would bring a potential FMLA-related request to him, and he would make the final decision. Reedy also states that FMLA issues were ultimately referred to a separate entity, the Benefit Services Center. Therefore, Reedy argues, she had no authority to exercise discretion or make decisions regarding FMLA matters. Rock-Tenn replies that Reedy exercised discretion because she stated in deposition testimony that she "felt like [she] was understanding when to ask [Hogan] if [she] should offer an employee FMLA." Because Reedy stated that she felt like she understood FMLA well enough to notify Hogan of a potential FMLA-related request, Rock-Tenn argues that she was exercising discretion and independent judgment. Reedy characterizes her testimony as showing that she merely looked for "red flags," whereas Rock-Tenn characterizes her testimony as Reedy touting her ability to interpret and apply the FMLA. After reviewing Reedy's deposition testimony, it is unclear that either party's characterization is completely accurate. Thus, the degree to which Reedy actually exercised discretion and independent judgment in reviewing leave requests for FMLA issues and the nature of Reedy's review of those requests are issues of fact best left to a jury to resolve.

As to Reedy's job questionnaire responses indicating that she engaged in policy clarification and research, Reedy responds that Rock-Tenn has cited no authority for the proposition that doing research requires the use of discretion or independent judgment with respect to matters of significance. Reedy also states that she eventually had to suspend her research due to other obligations, and Rock-Tenn offers no evidence showing that Reedy actually engaged in research and policy clarification during the period of time relevant to her lawsuit. Furthermore, the record is inadequate to show that whatever research and policy clarification Reedy performed involved the exercise of discretion and independent judgment.

Finally, regarding Reedy's involvement in garnishing wages, Reedy responds that her duties consisted of merely following the court orders and company procedure, and that Rock-Tenn offers no authority for the proposition that performing wage garnishments amounts to exercising discretion or independent judgment. Rock-Tenn argues that Reedy admitted in deposition testimony that she followed the applicable garnishment laws, and that following those laws required the use of discretion and independent judgment insofar as she was required to "interpret, construe, and explain the laws, policies, and regulations applicable to her work." In her deposition testimony, however, Reedy stated only that she followed the court orders and the applicable laws regarding precedence when there were multiple garnishments. Reedy did not talk about interpreting, construing, and explaining the laws, policies, and regulations applicable to her work, as Rock-Tenn contends. Rather, it appears from her deposition testimony that, in her position as payroll manager, Reedy simply followed the court orders she received regarding garnishments and then followed the proper procedures where there were multiple garnishments. The nature of Reedy's work with garnishments

and the extent to which her garnishment work involved discretion or independent judgment are disputed issues of fact for a jury to decide.

In summary, issues of fact remain regarding the nature of Reedy's duties and the extent to which they involved the exercise of discretion or independent judgment. In its brief in support, Rock-Tenn admits that Reedy insisted throughout her deposition that she did not exercise discretion or independent judgment sufficient to exempt her from the FLSA's overtime compensation requirements. Rock-Tenn's reply brief is replete with the accusation that Reedy is merely "lying and denying"—lying about the nature of her duties and denying that her own testimony shows that she is an exempt employee. Rock-Tenn's assertion that Reedy may be "lying and denying" places the Court in the position of having to consider the credibility of her testimony and arguments. Determining credibility and resolving disputed issues of fact are jobs for the finder of fact, not the Court. *See, e.g.*, *Lentz v. Hospitality Staffing Solutions, LLC*, 2008 WL 269607 (N.D. Ga. Jan. 28, 2008) (denying summary judgment where genuine issues of material fact existed regarding whether the employee managed a department, supervised at least two employees, and had hiring and firing authority sufficient to satisfy the FLSA executive exemption); *Bretherick v. Crittenden County, Ark.*, 2007 WL 890200, at *4 (E.D. Ark. Mar. 21, 2007) (denying summary judgment where the parties disputed the extent to which the employee regularly exercised discretion and independent judgment in performing his undisputed job duties).

**B.    STATUTE OF LIMITATIONS**

Rock-Tenn argues that it did not willfully violate the FLSA, meaning that the two-year statute of limitations should apply to Reedy's claim. An action for unpaid overtime compensation under the FLSA is "barred unless commenced within two years after the cause of action accrued." 29

U.S.C. § 255(a).  The statute provides an exception to this rule, however, as "a cause of action arising out of a *willful* violation may be commenced within three years."  *Id.* (emphasis added).  Neither an employer's general knowledge about the statute's potential applicability, nor an employer's lack of a "reasonable basis for believing that it was complying" with the FLSA, is by itself sufficient to demonstrate an employer's willfulness.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 134, 108 S. Ct. 1677, 1681, 1682, 100 L. Ed. 2d 115 (1988); *see also Samuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797, 803 (8th Cir. 2006).  An FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited."  *McLaughlin*, 486 U.S. at 133.  This standard requires more than mere negligence or a good-faith but erroneous assumption that a pay plan complied with the FLSA.  *Id.* at 135.

Rock-Tenn argues that it reasonably believed in good faith that Reedy was exempt from the FLSA's overtime compensation requirements.  Relying on Ken Hogan's affidavit, Rock-Tenn states that in the spring of 2004, Robert Kouston, a Department of Labor investigator, conducted an investigation of Rock-Tenn's wage practices.  According to Hogan, Kouston concluded that there were some small discrepancies, such as some hourly employees being paid too much or not enough overtime.  Kouston reviewed all job descriptions and pay for salaried employees, including Reedy, and determined that all of Rock-Tenn's salaried employees were paid correctly and were not owed overtime.  Rock-Tenn says that it relied on its own interpretation of the FLSA as well as Kouston's investigation in classifying Reedy as exempt under the FLSA.

In response, Reedy argues that Hogan's testimony regarding the Kouston investigation, without supporting documentation of the investigation, is insufficient to show that Rock-Tenn reasonably relied on guidance from the Department of Labor.  Reedy says that she had discussions

with management regarding her pay; continued to record her hours; reported her hours to Hogan; and discussed with Hogan whether she should be exempt. Reedy also argues that Hogan should have known that she should be exempt after she was placed in the "exempt group" during the instructional class that she attended with Hogan. Thus, Reedy argues that a jury could conclude that Rock-Tenn acted willfully in classifying her as an exempt employee.

Reedy has failed to present sufficient evidence showing that Rock-Tenn either knew that Reedy should have been an exempt employee or showed reckless disregard as to her exempt status. Reedy's evidence of willfulness consists of her own questions to management and Hogan regarding her status and an instructional class exercise. Reedy provides no details regarding the instructors who conducted the exercise or what questions were asked. Raising concerns with management regarding her exempt status does not show that Rock-Tenn willfully disregarded the FLSA's requirements. At most, her proffered evidence shows only that Rock-Tenn could not have reasonably believed that it was complying with the FLSA, but lack of reasonable belief is insufficient to show willfulness. *McLaughlin*, 486 U.S. at 133, 134. Rock-Tenn has offered some evidence that Reedy's supervisor, Hogan, relied on a Department of Labor investigation which concluded that Rock-Tenn was not improperly applying FLSA's exempt status to any of its salaried employees, including Reedy. Without more, Reedy's questions to management and attendance at an instructional class are insufficient to show that Rock-Tenn willfully violated the FLSA. Because a reasonable jury could not conclude, based on the evidence before the Court, that Rock-Tenn willfully violated the FLSA, the two-year statute of limitations applies to Reedy's claim for overtime compensation. 29 U.S.C. § 255(a).

## CONCLUSION

For the foregoing reasons, Rock-Tenn's motion for summary judgment is DENIED as to Reedy's status as an exempt employee under the FLSA and GRANTED as to the two-year statute of limitations on Reedy's claim.  Document #15.

IT IS SO ORDERED this 29th day of June, 2009.

                                                          J. LEON HOLMES
                                                          UNITED STATES DISTRICT JUDGE